[Civ. No. 10223. Second Appellate District, Division One.—March 11, 1937.]

S. W. TRAYLOR, Respondent, v. LOS ANGELES MOUN-
TAIN PARK COMPANY (a Corporation) et al., Appel-
lants.

Overton, Lyman & Plumb, Irving H. Prince, Donald H.
Ford and Guy Richards Crump for Appellants.

Charles L. Nichols, Carleton B. Wood, Schell & Delamer and
William G. Bonelli for Respondent.

BISHOP, J., *pro tem.*—The plaintiff recovered damages in excess of $36,000, because of the repudiation by the defendants of a contract in which the parties to this action were mutually interested, and the defendants appealed. From the face of the contract it would appear that by its own terms it had expired before the repudiation took place. This defect, which obviously would have been fatal to the plaintiff's cause, was cured, according to the court's findings, by a course of conduct on the part of the defendants which estops them from claiming that the contract had expired, and which amounts to a waiver of the provision that it would expire on the date named. We have come to the conclusion that the finding of estoppel and waiver is not supported by the evidence, and further, that as to the defendant Bell, the finding that he repudiated or otherwise breached the contract was not warranted by the evidence. In reaching our conclusion we have taken advantage of findings which, with his wonted fairness, the trial judge made because he found the facts required them, although they were adverse to the winning party.

The contract upon which our interest centers was the third of a succession of contracts having as an object the exploitation of a rich and extensive deposit of limestone lying within the boundaries of Los Angeles City. This third contract was attached to the complaint as "Exhibit C", a designation made use of throughout the subsequent record. The territory where the deposit had been discovered was a part of a large tract of land owned by the defendant Los Angeles Mountain Park Company, a corporation, to which we shall hereafter refer as the "Mountain Company". The plaintiff and a Mr. Day were led by years of experience in the manufacture and erection of machinery for the crushing of rock in mining operations, to become interested in and to investigate the possibilities of this rich deposit of limestone. So favorable did they find conditions that an ambitious scheme for converting the stone into cement and the cement into riches was agreed upon.

A corporation, it was determined, should be formed under the laws of Delaware, and by the time exhibit C was executed it had been formed, as the agency by which the project was to be carried out. To it the defendant Mountain Company agreed to convey one hundred acres of the choicest parcel of its lime deposit land, and to it it gave an option for a ninety-

nine year lease on an additional four hundred acres, to be exercised after the manufacture and sale of cement had been going on for a period of three years. The conveyance of the one hundred acres was not to take place until bonds and preferred stock in the Delaware corporation had been sold to place $1,200,000 in the corporation's treasury. The consideration to be received by the defendant Mountain Company for the conveyance of its land was one-third of the common stock of the Delaware corporation. The remaining two-thirds of this common stock was to go to the individuals who were parties to the contract, that is, the plaintiff, Mr. Day and a Mr. Howell, to whose rights and burdens the defendant Bell became a successor in April, 1930.

Exhibit C was executed February 25, 1929, by which time it had become apparent that a permit to construct and operate a cement plant at the place planned was not to be readily obtained. In their contract the parties provided that the conveyance of the hundred acres was to be made "When all of the zoning permits herein contemplated shall have been obtained, and all the financing and plans of operation of the new corporation have been completed." The relative order of the permit and financing was indicated in paragraph XIV of the contract, where we also find the term of its life expressly set out:

"The second parties must complete and fulfill all of the requirements above set forth in Article II, as to financing the new corporation and issuing stock, within three (3) months after the necessary zoning and other permits are obtained. If said permits are not obtained prior to June 15, 1930, this agreement will terminate."

The difficulties attendant upon the effort to surmount that which was thus set up as the first hurdle, the obtaining of zoning permits, we need not recount, for the plaintiff did not seek recovery on the theory that the defendants had been derelict in any duty to obtain, or to make every reasonable effort to obtain, the permits at least seemingly required. No permit had been obtained up to July 9, 1931, the date of the second of two communications which form the basis of plaintiff's cause of action, one for the anticipatory breach of a contract by repudiation.

It is obvious that in order to allege and prove a cause of action for the breach in July, 1931, of a contract which by

its terms terminated in June, 1930, the plaintiff had to allege and prove an avoidance of those terms. This he attempted in his original complaint, by alleging that the provision that the contract should terminate in June, 1930, was expressly and mutually waived and that the defendants were estopped to assert that the provision was not waived. About half way through the trial, an amendment to the complaint was filed to explain at greater length the theory on which the contract was claimed to have lived beyond June, 1930. The allegations of the amendment which we need to consider were carried over into the trial court's findings in these words: " . . . both before and after said 15th day of June, 1930, and at all times up to said breach of said agreement, all the parties to said agreement treated it as a valid and subsisting contractual obligation, and so conducted themselves by word and act with reference thereto, to the knowledge of plaintiff herein, and the defendants herein and each of them repeatedly represented to the plaintiff that they and each of them considered said agreement as such valid and subsisting contractual obligation and as not terminated by reason of any expiration date therein provided, or for any other reason whatever; that said conduct of said defendants and said representations of the said defendants were intended to be acted upon by the plaintiff herein, and were done and made under circumstances such that the plaintiff had the right to believe and did believe that said defendants so intended; that the plaintiff did in fact act upon said conduct and said representations of said defendants; that in reliance upon said conduct and said representations of said defendants, and solely because thereof, plaintiff was induced to and did devote a large amount of time and services and did expend large sums of money in furtherance of the project set forth in said agreement exhibit C; that the plaintiff so devoted said time and services and so expended said sums of money with the knowledge and consent of the defendants and each of them; that the plaintiff would not so have devoted said time or said services or so expended said sums of money, or any of them, had it not been for said conduct and said representations on the part of said defendants; and said defendants knew that, had it not been for said conduct and representations on their part and on the part of each of them, the plaintiff would not have so devoted said time or services, or so expended said sums of

money or any of them; that by reason of said conduct and representations, and of each and all of them, defendants and each of them have waived any right which otherwise they or any of them might have had to rely upon any provisions of said agreement, Exhibit C, terminating said agreement; that by reason of said conduct and said representations, and each and all of them, the defendants and each of them are estopped to deny that they and each of them waived any such provisions of said agreement; and that by reason of said conduct and said representations and of each and all of them, the defendants and each of them, are estopped to allege that said agreement terminated on the 15th day of June, 1930, or at any other time or in any other manner, except by virtue of their own breach thereof as herein found''.

 The plaintiff opposes an examination of the evidence to see whether or not this finding is supported, because, he insists, ''In not one instance is any particular pointed out in which the evidence is insufficient to support the finding referred to, nor is it specified that there was no evidence to support the particular finding.'' Without quoting at length the specification of insufficiency, itself claimed to be insufficient, we include enough to reveal its form and pertinent contents: ''G. That the evidence is insufficient to support the finding that after the 14th day of April, 1931, all or any of the parties to said agreement, Exhibit C, treated it as a valid and subsisting contractual obligation or so conducted themselves by word or act with reference thereto, to the knowledge of the plaintiff herein or otherwise, or that the defendants or any of them repeatedly, or at any time subsequent to April 14th, 1931, represented to the plaintiff or any other person or at all, that they, or any of them, considered said agreement as a valid or subsisting contractual obligation or as not terminated by reason of any expiration date therein provided . . . or that the plaintiff devoted any time or services or expended any sums of money after April 14, 1931, in furtherance of the project set forth in said agreement, Exhibit C, with the knowledge or consent of the defendants, or any of them, or otherwise, or at all; . . . '' This form of specification complies fully with the letter and purpose of section 648 of the Code of Civil Procedure. (See cases in support of text, 2 Cal. Jur. 713 et seq.) The record before us does not warrant the application of *Nisbet* v. *Rhinehart*, (1935) 2 Cal.

(2d) 477 [42 Pac. (2d) 71], or of its included cases, all cited by respondent. Nor is *Rowland* v. *Columbia Min. etc. Co.*, (1934) 2 Cal. App. (2d) 410 [38 Pac. (2d) 418], also cited, at all in point.

Rereading the finding we note that because of certain representations and conduct with reference to the continuous vitality of exhibit C, the defendants have waived their right to rely upon the provisions of exhibit C which terminated it, and are estopped to deny that they have waived such provisions, and are estopped to deny that exhibit C had terminated June, 1930, or at any other time prior to their repudiation of it. The representations and the conduct, we discover, were to the effect that exhibit C was a valid and subsisting contractual obligation, which had not terminated. There was no finding of statement or conduct inducing a belief that the effective days of exhibit C had been or would be extended until a permit was granted or the last stone turned in an endeavor to obtain one; no finding that plaintiff was led to believe that a written extension would be granted or that one had been granted beyond July 9, 1931; only the finding that the parties "so conducted themselves by word and act with reference thereto . . . and . . . represented to the plaintiff that they and each of them considered" exhibit C still alive.

We need not examine the conduct of the defendants by word or act prior to April 15, 1931, for by an additional finding the trial court determined: "That said agreement was extended to April 15, 1931, pursuant to the terms of a written agreement entered into between said Chapin A. Day and said defendant, Los Angeles Mountain Park Company. That there was no other written extension of said agreement." All the acts and representations which antedate April 15, 1931, therefore, were in accord with the actuality and not at all in conflict with the statement made to the plaintiff and to Mr. Day of a fact known to them, that the extension which had been granted had a time limit on it; that it was an extension which expired, as the trial court found, April 15, 1931.

As appellants pointed out, the evidence is insufficient to support the finding that there was representation or conduct amounting to a waiver or estoppel, occurring after April 14, 1931. There was very little activity of any sort between that date and July 9th, and none on the part of the defendants which can be said to give rise to estoppel or which can be in-

terpreted as a waiver of the right to say no extension had been given other than the one which was in writing and which had expired.

A repudiation in July of a contract which had expired in April does not give rise to a cause of action. Nor is the failure to prove a case helped out by the error, contained in the letter of repudiation, consisting of the statement (in effect) that the contract had expired in August of the previous year. The single case cited by the plaintiff in support of his contention that the repudiation can only be justified on the reasons explicit in it, *Morrison* v. *Sycamore Canyon Gravel Co.*, (1929) 102 Cal. App. 536 [283 Pac. 84], fails to fit the situation. A deceased contract is not breached by a statement that it died at a time earlier than the true date of death.

We need do no more than note, further, that in any event the judgment against the defendant Bell could not stand, for the finding that he had breached by repudiation exhibit C is without support in the evidence. As admitted by plaintiff's counsel at the time this appeal was orally argued, the communications relied upon, the telegram of June 20th and the letter of July 9th, spoke for the Mountain Company, not for the individual defendant Bell. Nor is there in the complaint or findings any support for the suggestion that he might be held responsible for having caused the Mountain Company to have breached its contract.

The judgment appealed from is reversed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 7, 1937, and the following opinion then rendered thereon:

THE COURT.—In his petition for a rehearing, respondent argues that the effect of our opinion is to declare that no acts or conduct of defendants prior to April 15, 1931, could create or be considered as creating a waiver or estoppel or thereby to extend the operation of exhibit C beyond that date. We do not believe that our opinion is susceptible of such an interpretation, but to put the matter beyond dispute we add that we were not considering what could have been the result but what was found to be the result of defendants' acts and conduct. The evidence would have sup-

ported findings that the plaintiff was in no position to rely on an estoppel in any particular respecting the life of exhibit C. We need not, therefore, in such a situation, if we ever should, enlarge upon the trial court's finding. What the trial court found was that the defendants and all the parties treated the contract (exhibit C) as a valid and subsisting legal obligation, and the defendants so represented it to be. By virtue of the written extension, obviously effective as to all those interested, the contract was valid and subsisting up until April 15, 1931. Speaking of it or acting with reference to it as a binding contract during this period, of itself, may not be said to constitute a waiver of the provision for termination, nor is it conduct which would estop one from thereafter denying that he had waived the provision beyond the existing extension. There was no evidence which justified the finding that during the period after April 15th, the parties treated the contract as a valid or a subsisting legal obligation with the effect that they thereby waived the termination provision or were estopped to deny that it was waived beyond April 15th.

The petition for rehearing is denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 10, 1937.